Anastasios P. Tonorezos (AT 8709)
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Defendants –
M&A COUNSELORS & FIDUCIARIES, LLC and C. WILLIAM HOILMAN
150 East 42nd Street
New York, New York 10017
(212) 490-3000
(212) 480-3038
Ernest.tonorezos@wilsonelser.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
LAW PRACTICE MANAGEMENT CONSULTANTS, LLC,
WKNB PRODUCTIONS, LLC and DANIEL P. BUTTAFUOCO:
and ASSOCIATES, PLLC, DANIEL P. BUTTAFUOCO, LLC,
and DANIEL P. BUTTAFUOCO,

                                     08 Civ. _____

               Plaintiffs,        **NOTICE OF REMOVAL**

     against -

M&A COUNSELORS & FIDUCIARIES, LLC and
C. WILLIAM HOILMAN,

            Defendants.
-------------------------------------------------------------------x

SPATT, J.
WALL, M.J.
**08   4557**

**TO: THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK, AND TO PLAINTIFF AND ITS ATTORNEYS OF RECORDS**

     PLEASE TAKE NOTICE that defendant M&A COUNSELORS & FIDUCIARIES, LLC

and C. WILLIAM HOILMAN (hereinafter "Defendants"), pursuant to 28 U.S.C. §1441 and

based upon this Court's diversity jurisdiction under 28 U.S.C. §1332, removes this action from

the Supreme Court of the State of New York, County of Nassau, to the United States District

Court for the Eastern District of New York.  The grounds for such removal are as follows:

     1.    Plaintiffs LAW PRACTICE MANAGEMENT CONSULTANTS, LLC, WKNB

PRODUCTIONS, LLC and DANIEL P. BUTTAFUOCO and ASSOCIATES, PLLC, DANIEL

3409793.1

P. BUTTAFUOCO, LLC, and DANIEL P. BUTTAFUOCO (hereinafter "Plaintiffs")

commenced an action on or about October 9, 2008 by filing a Summons and Verified Complaint

in the Supreme Court of the State of New York, County of Nassau.

2.      Upon information and belief, the Summons and Verified Complaint were

subsequently served on Defendants on or about October 13, 2008. A copy of the Summons and

Verified Complaint is attached hereto as Exhibit "A". On November 3, 2008, Defendants filed a

Request for Judicial Intervention seeking an Order to Show Cause. A copy of the Request for

Judicial Intervention is attached hereto as Exhibit "B". Also on November 3, 2008, Defendants

filed an Order to Show Cause to extend their time to answer, move, or otherwise appear. A copy

of the Order to Show Cause is attached hereto as Exhibit "C".

3.      On November 6, 2008, a telephone conference was held by and between counsel

for all parties and with the law secretary to Justice R. Bruce Cozzens. Plaintiffs' counsel would

not agree to an extension of time for Defendants to answer, move, or otherwise appear in the

matter, and accordingly, the Order to Show Cause was signed and made returnable for November

14, 2008.

4.      Upon information and belief, Exhibits A through C are the only pleadings in the

action filed in Nassau County Supreme Court.

5.      The Complaint sets forth that the individual plaintiff is a resident of the State of

New York. The Complaint also sets forth that the entities named as additional plaintiffs are all

organized and existing with offices in the State of New York. See Plaintiffs' Complaint attached

hereto as Exhibit "A". Plaintiffs designate Nassau County as the place of trial based upon

Plaintiff's business address, 144 Woodbury Road, Woodbury, New York 11797. See Plaintiffs'

Summons attached hereto as Exhibit "A".

3409793.1

6.      The Complaint also acknowledges that individual defendant C. William Hoilman is a resident of the Commonwealth of Massachusetts. <u>See</u> Plaintiffs' Complaint attached hereto as Exhibit "A". As Plaintiffs' Summons sets forth, Defendant M&A COUNSELORS & FIDUCIARIES, LLC, has a principal place of business in Woburn, Massachusetts.

7.      The amount in controversy, as alleged in Plaintiffs' Complaint exceeds $75,000, exclusive of interest and costs. <u>See</u> Plaintiffs' Complaint attached hereto as Exhibit "A".

8.      This removal is timely pursuant to 28 U.S.C. § 1446(b).

9.      Jurisdiction exists in this Court by reason of diversity of citizenship, 28 U.S.C. § 1332.

10.     Venue in this Court is proper pursuant to 28 U.S.C. §1391 (a)(1) and (c).

Dated:  New York, New York
        November 10, 2008

Respectfully yours,

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

By: _____
Anastasios P. Tonorezos
*Attorneys for Defendants*
*M&A Counselors and Fiduciaries, LLC and*
*C. William Hoilman*
150 East 42nd Street
New York, New York 10017-5639
(212) 490-3000
File No. 05935.00071

TO:     Shawn M. Alfano, Esq.
        *Attorney for Plaintiffs*
        144 Woodbury Road
        Woodbury, NY 11797
        (516) 746-8100

3409793.1

## CERTIFICATE OF SERVICE

I, Judith Guerilus hereby certify that a true and correct copy of the foregoing Notice of

Removal was served via First Class Mail this 10th day of November 2008 upon:

Shawn M. Alfano, Esq.
Attorney for Plaintiffs
144 Woodbury Road
Woodbury, NY 11797

_Judith Guerilus_
Judith Guerilus

SWORN TO BEFORE ME THIS
10TH DAY OF NOVEMBER 2008

_Marcia Saunders_

MARCIA SAUNDERS
NOTARY PUBLIC, State of New York
No. 31-4717671
Qualified in New York County
Commission Expires May 31, 2010

3409793.1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**

LAW PRACTICE MANAGEMENT CONSULTANTS, LLC,
WKNB PRODUCTIONS, LLC and DANIEL P. BUTTAFUOCO
and ASSOCIATES, PLLC, DANIEL P. BUTTAFUOCO, LLC
and DANIEL P. BUTTAFUOCO,

*Plaintiff(s)*

-against-

M&A COUNSELORS & FIDUCIARIES, LLC and
C. WILLIAM HOILMAN,

_____ *Defendant(s)*
To the above named Defendants

Index No. 18651/08

*Plaintiff designates Nassau
County as the place of trial*

*The basis of venue is
Plaintiff's business
144 Woodbury Road
Woodbury, NY 11797*

**Summons**

*County of Nassau*

You are hereby summoned to answer the complaint in this action and to serve a copy
of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons,
exclusive of the day of service (or within 30 days after the service is complete if this summons
is not personally delivered to you within the State of New York); and in case of your failure to
appear or answer, judgment will be taken against you by default for the relief demanded in the
complaint.

Dated:       Woodbury, New York
             October 9, 2008

                              **SHAWN M. ALFANO, ESQ.**
                              **Attorney for Plaintiffs**
                              144 Woodbury Road
                              Woodbury, NY 11797
                              (516) 746-8100

                              By: SHAWN M. ALFANO, ESQ.

**DEFENDANTS' ADDRESSES:**

**M&A COUNSELORS & FIDUCIARIES, LLC**
21 Cummings Park, Suite 200
Woburn, MA 01801

**C. WILLIAM HOILMAN**
21 Cummings Park, Suite 200
Woburn, MA 01801

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------X
LAW PRACTICE MANAGEMENT CONSULTANTS, LLC,
WKNB PRODUCTIONS, LLC and DANIEL P. BUTTAFUOCO
and ASSOCIATES, PLLC, DANIEL P. BUTTAFUOCO, LLC
and DANIEL P. BUTTAFUOCO,                                          VERIFIED COMPLAINT
                                          Plaintiffs,             Index No.
            -against-

M&A COUNSELORS & FIDUCIARIES, LLC and
C. WILLIAM HOILMAN,
                                          Defendant.
-------------------------------------------------------------------X

Plaintiffs, by her attorney, SHAWN M. ALFANO, ESQ., complaining of the defendants,

herein alleges upon information and belief:

**FIRST:** Upon information and belief, at all times hereinafter mentioned, the plaintiff,

Daniel P. Buttafuoco, was a resident of Suffolk County, New York.

**SECOND:** Upon information and belief, at all times hereinafter mentioned, the plaintiff,

LAW PRACTICE MANAGEMENT CONSULTANTS, LLC (hereinafter "LPMC"), was a duly

organized and existing LLC with offices at 144 Woodbury Road, Woodbury, New York 11797.

**THIRD:** Upon information and belief, at all times hereinafter mentioned, the plaintiff,

WKNB PRODUCTIONS, LLC, was a duly organized and existing LLC with offices at 144

Woodbury Road, Woodbury, New York 11797.

**FOURTH:** Upon information and belief, at all times hereinafter mentioned, the plaintiff,

DANIEL P. BUTTAFUOCO and ASSOCIATES, PLLC (hereinafter "PLLC"), was a duly

organized and existing professional LLC with offices at 144 Woodbury Road, Woodbury, New

York 11797.

**FIFTH:** Upon information and belief, at all times hereinafter mentioned, the plaintiff,

DANIEL P. BUTTAFUOCO, LLC (hereinafter "DPB, LLC") was a duly organized and existing

LLC with offices at 144 Woodbury Road, Woodbury, New York 11797.

**SIXTH:** Upon information and belief, at all times hereinafter mentioned, the plaintiff,

2

DANIEL P. BUTTAFUOCO (hereinafter "Buttafuoco"), is an individual and a practicing attorney, licensed in the State of New York, with offices located at 144 Woodbury Road, Woodbury, New York 11797.

**SEVENTH:** Upon information and belief, at all times hereinafter mentioned, the defendant, M&A COUNSELORS & FIDUCIARIES, LLC, (hereinafter "M&A"), was a professional LLC established to provide legal services to the public generally and the plaintiffs individually.

**EIGHTH:** Upon information and belief, at all times hereinafter mentioned, the defendant, C. WILLIAM HOILMAN (hereinafter "Hoilman"), was a resident of the Commonwealth of Massachusetts.

**NINTH:** Upon information and belief, at all times hereinafter mentioned, the defendant, "Hoilman" is an attorney duly admitted to practice law in the Courts of the Commonwealth of Massachusetts.

**TENTH:** Upon information and belief, at all times hereinafter mentioned, the defendant, "Hoilman" is a principle in M&A COUNSELORS & FIDUCIARIES, LLC.

**ELEVENTH:** Upon information and belief, at all relevant times hereinafter mentioned, the defendant "Hoilman" is an employee of M&A COUNSELORS & FIDUCIARIES, LLC.

**TWELFTH:** Upon information and belief, at all relevant times hereinafter mentioned, the defendant "Hoilman" is a member of M&A COUNSELORS & FIDUCIARIES, LLC.

**THIRTEENTH:** That sometime in the years 2002 and 2003 LAW PRACTICE MANAGEMENT CONSULTANTS, LLC, (hereinafter "LPMC"), entered into a "Refund Plus" type of "Supplemental Busines Risk" insurance policy issued by Boston Life and Annuity Company, Ltd. (hereinafter "Boston Life").

**FOURTEENTH:** That sometime in the years 2002 and 2003 WKNB PRODUCTIONS, LLC entered into a "Refund Plus" type of "Supplemental Busines Risk" insurance policy issued by Boston Life and Annuity Company, Ltd. (hereinafter "Boston Life").

3

**FIFTEENTH:**   That sometime in the years 2002 and 2003 DANIEL P. BUTTAFUOCO and ASSOCIATES, PLLC and/or DANIEL P. BUTTAFUOCO, LLC and/or DANIEL P. BUTTAFUOCO entered into a "Refund Plus" type of "Supplemental Busines Risk" insurance policy issued by Boston Life and Annuity Company, Ltd. (hereinafter "Boston Life").

**SIXTEENTH:**   That the policies issued above were sold and designated in such a way that the premiums would be invested in income producing and/or growth oriented financial assets and, after a stated period if no claims were made, the premiums and all gains would be refunded to the policyholders (also known as the "Risks"), namely the plaintiffs herein, hence the name "Refund Plus."

**SEVENTEENTH:**   That certain documents, policies, statements and correspondence were issued by Boston Life through its agents or administrators or other entities and individuals which confirmed the policy terms and the premium payments, account balances and status of payments by the plaintiffs herein.

**EIGHTEENTH:**   That certificates were issued to the "Risks" which set forth the details of the various accounts or policies, including to the plaintiffs herein.

**NINETEENTH:**  That plaintiffs dutifully complied with all of the contractual and other policy provisions and has not made any "claims" against these "Refund Plus" policies.

**TWENTIETH:**   That pursuant to the terms of the policies as sold and marketed, and as represented by brokers and other entities and individuals, plaintiffs were all entitled to be paid and/or credited with the balance due them as reflected in the statements provided at the proper time.

**TWENTY-FIRST:**   That sometime in 2006, Boston Life, for its own reasons, decided to unilaterally terminate these policies and keep the premiums paid in violation of the agreement that policyholders ("Risks") would get a "Refund Plus" (that is, a refund of the premiums plus investment gains.

**TWENTY-SECOND:**   That on or about March 23, 2006, Boston Life suddenly, and

4

unilaterally and without good cause, brought a declaratory judgment action in the British Virgin Islands attempting to declare their unilateral action of terminating the aforesaid policies and keeping the aforesaid premiums as "legal" and "justifiable by law", and named in that suit the plaintiffs herein (among others).

**TWENTY-THIRD:** That clearly this action, conducted offshore from the United States of America, was calculated by Boston Life to deprive plaintiffs of property and their rights under the policies, accounts and statements, and, clearly, that declaratory judgment lawsuit was a thinly disguised attempt with a minimal veneer of legality calculated to legitimize Boston Life's theft of the plaintiffs' money, including many other policyholders.

**TWENTY-FOURTH:** That shortly after the date of the filing of the lawsuit by Boston Life, Daniel P. Buttafuoco met with the defendant, "Hoilman" to obtain representation for the lawsuit against Boston Life for its reprehensible conduct in arbitrarily stealing plaintiffs' money under these policies, and for fraud in issuing policies which it apparently had no intention of honoring.

**TWENTY-FIFTH:** That on or about April 2006, each and all of the plaintiffs herein contractually hired the defendants to represent them in connection with the vigorous defense of Boston Life's bogus lawsuit and to immediately counterclaim for the property and money due to plaintiffs rightfully under the policy, plus damages and plus legal fees allowable under the law of the British Virgin Islands.

**TWENTY-SIXTH:** That a retainer with defendants was signed, (a copy of which is attached hereto as Exhibit "A"), by the plaintiffs herein which is dated April 25, 2005.

**TWENTY-SEVENTH:** That plaintiffs collectively advanced significant money for out-of-pocket legal fees to the defendants pursuant to said retainer agreement over the period of representation of plaintiffs by defendants.

**TWENTY-EIGHTH:** That the representation of plaintiffs by defendants continues to date even up to the conducting of an anticipated deposition of Daniel P. Buttafuoco in

5

Woodbury, New York on October 13, 2008, at which defendants are expected to be present.

**TWENTY-NINTH:**  That the defendants additionally prosecuted a lawsuit in the British Virgin Islands and in other jurisdictions, including Miami, Florida, on behalf of the plaintiffs herein against Boston Life and some of its principals.

**THIRTIETH:**  That the defendants hired outside counsel of their own choosing which they supervised in connection with the representation of the plaintiffs.

**THIRTY-FIRST:** That defendants jointly represented the plaintiffs with assistance of outside counsel in the British Virgin Islands and in Miami, Florida.

**THIRTY-SECOND:** That defendants assumed responsibility through their oversight for all aspects of these litigations involving the plaintiffs, their clients.

**THIRTY-THIRD:** That the defendants and the other outside counsel of their choosing assumed joint representation of the plaintiffs herein in these various proceedings herein described.

**THIRTY-FOURTH:**  That defendants kept in constant correspondence with the plaintiffs throughout the course of this litigation by fax, telephone, email and regular mail.

**THIRTY-FIFTH:** That defendants omitted material and relevant facts in the course of their correspondence to the plaintiffs, most notably by the fact that a personal relationship existed between Hoilman and a certain George Huff (hereinafter "Huff") of Employers International, which had lasted many years, and going back to their days in the Armed Forces served together, and that Huff's interests and Employer International's interests were adverse to plaintiffs herein.

**THIRTY-SIXTH:**  That defendants had, throughout their representation of plaintiffs, a serious conflict of interest in their representation of plaintiffs herein which was not adequately disclosed, nor solved, nor waived.

**THIRTY-SEVENTH:** That defendants violated relevant Canons of Ethics and Disciplinary Rules in their representation of plaintiffs herein.

**THIRTY-EIGHTH:** That defendants committed legal malpractice and were negligent in

6

their representation of plaintiffs herein.

**THIRTY-NINTH:** That defendants missed applicable time periods in their representation of plaintiffs herein in the litigation in the British Virgin Islands (hereinafter "underlying litigation").

**FORTIETH:** That the defendants so botched and mishandled the underlying litigation on behalf of plaintiffs, that plaintiffs were caused to lose the underlying litigation by default in a so-called "Master Cottle Debarring Order" in the British Virgin Islands.

**FORTY-FIRST:** That defendants were negligent in not filing papers in a timely manner in the underlying litigation, and in failing to meet deadlines imposed by the court by which to file important papers.

**FORTY-SECOND:** That the said Debarring Order "haunted" the entire case against Boston Life even in the ensuing liquidation of Boston Life, such that it has rendered it impossible to prevail against Boston Life in any court of law to the damage, detriment and financial loss of plaintiffs.

**FORTY-THIRD:** That Boston Life was, at some point, found to be in violation of law by the governing authorities of the British Virgin Islands and was forced into involuntary liquidation which should have resulted in money being paid to the plaintiffs herein on their valid claims in said liquidation proceedings.

**FORTY-FOURTH:** That defendants' incompetence, negligence, legal malpractice, conflict of interest and violations of ethics has totally destroyed the plaintiffs' case and claims against Boston Life or other parties, and made it impossible to prevail in any forum thus resulting in total loss of all claims, all paid legal fees, any premiums, investments and any and all property rights of plaintiffs vis-a-vis Boston Life.

**FORTY-FIFTH:** That the plaintiffs have been collectively damaged in amounts which exceed the jurisdictional limits of all lower courts.

**FORTY-SIXTH:** This case is properly subject to jurisdiction in Nassau County, New

7

York, because plaintiffs reside in Nassau County, New York, and defendants have conducted and performed legal services here in Nassau County, New York, and it is anticipated that defendants will be served with process here in Nassau County, New York.

**FORTY-SEVENTH:** Plaintiffs have been damaged collectively in the approximate amount of Three Hundred Thousand ($300,000.00) Dollars.

**WHEREFORE,** plaintiffs have been damaged collectively in the approximate amount of Three Hundred Thousand ($300,000.00) Dollars and demand judgment against the defendants in this amount which exceeds the jurisdictional limits of all lower courts, and to be determined at the time of trial, together with interest from the date of accident, cost and disbursements of this law suit, and for such other and further relief as this court deems appropriate.

Dated:   Woodbury, New York
       October 9, 2008              Yours, etc.,

                                    SHAWN M. ALFANO, ESQ.
                                      Attorney for Plaintiffs
                                      144 Woodbury Road
                                      Woodbury, New York  11797
                                      (516) 746-8100

                                      By: Shawn M. Alfano, Esq.

8

### VERIFICATION

STATE OF <u>NEW YORK</u> )
             )ss.:
COUNTY OF <u>NASSAU</u> )

      I, DANIEL P. BUTTAFUOCO, being duly sworn, deposes and

says:

      I am one of the individual plaintiffs in the within action. I am also the manager

of Daniel P. Buttafuoco & Associates, PLLC and the manager of Daniel P.

Buttafuoco, LLC. I have read the foregoing Summons and Verified Complaint

and know the contents thereof, the same is true to my own knowledge, except

as to those matters therein stated to be alleged upon information and belief, and

as to those matters I believe them to be true.

      I sign in all of the above capacities.

                                Daniel P. Buttafuoco

Sworn to before me this
  _____ day of Oct. , 2008.

NOTARY PUBLIC

MARYELLEN P. DE PURPO
Notary Public, State of New York
No. 01 DE...
Qualified in ... County
Commission Expires ... 20

## VERIFICATION

STATE OF NEW YORK )
)ss.:
COUNTY OF NASSAU )

I, ELLEN BERNIUS, being duly sworn, deposes and

says:

I am the manager of LAW PRACTICE MANAGEMENT CONSULTANTS, LLC and the manager of WKNB PRODUCTIONS, LLC. I have read the foregoing Summons and Verified Complaint and know the contents thereof, the same is true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

I sign in all of the above capacities.

_____
Ellen Bernius

Sworn to before me this
___ day of Oct, 2008.

_____
NOTARY PUBLIC

Notary ...           ... York
...
C...
C... ... //

Exhibit A

*BUTTAFUOCO*



**M&A Counselors and Fiduciaries, LLC**
**Attorneys at Law**
21 Cummings Park, Suite 200
Woburn, MA 01801

Tel: 781.376.9400
Fax: 781.376.9444
Web: www.macrust.com
e-mail: firm@macounselors.com

*LAW PRACTICE MANAGEMEN CONSULTANTS*
*WKNB PRODUCTIONS (KRISTEN BUTTAFUOCO) AND*

Engagement Agreement

I (we), *DANIEL P. BUTTAFUOCO* "Client"), hereby agree to retain C. William
Hoilman, Esq. of M&A Counselors and Fiduciaries, LLC of Woburn, Massachusetts
("Firm") for the purpose of representing Employers International, Inc and Client in
connection with the suit filed by Boston Life and Annuity Company Ltd in the Eastern
Caribbean Supreme Court In the High Court of Justice, British Virgin Islands, entitled
"Boston Life and Annuity Company Ltd vs. Dijon Holdings Limited, Et. Al.", Claim
Number 2006/0070 ("Boston Life Suit"), in which Client is named as a Defendant, and
any further action on behalf of Client relating to Boston Life, its principals and/or
counselors, whether in the US or other overseas jurisdiction.

1.  Firm hereby acknowledges receipt of $ *4160.49* (representing 2% of current
unused reserves of Client's Boston Life Policy) as a retainer in this matter and, in
consideration of the payment thereof, agrees to provide legal services in connection with
the above matter and to keep Client fully informed of all significant developments, and to
send copies of relevant documents necessary to achieve that purpose. The initial retainer
paid herein shall be aggregated with amounts paid by other Clients named in the suit and
shall be applied against actual legal services performed for Client and the combined
group of Clients and for costs and expenses incurred. In general, unless the services
rendered relate only to Client's unique issues, Firm's time will be billed against the joint
escrow fund ("Fund") for the combined group of Clients pro rata to the potential liability
of each Client as determined solely by Firm, if appropriate, otherwise Client will be
billed directly.

2.  It is agreed by and between Client and Firm that the retainer paid herein by Client
shall be applied against legal services actually performed in connection with the Boston
Life Suit and related issues, which services normally shall be charged at Firm's standard
rate of two hundred and fifty dollars ($250.00) per hour. Client recognizes that other
professionals will be required to assist in the representation of Client and Client hereby
authorizes Firm to engage such professionals as, in Firm's sole discretion, are required
and to charge such representation to the Fund, as Firm in its sole discretion determines is
appropriate. Outside professionals initially identified as necessary to the defense of this
matter are: Kieran P. Fallon, Esq. for litigation against the principals of Boston Life in the
State of Florida; Dr. Joseph Archibold and Simon Bennett, Queen's Counsel in the BVI;
Nigel Bailey, former Insurance Commissioner in the BVI; William M. Sharp, Esq. for
international tax issues; and William J. Wise, Esq. for domestic tax issues. The fees for
services of such other professionals may be more or less than Firm's standard rate

indicated above. In determining the amount to be charged for the legal services of other professionals, Firm will consider:

- The time and effort required, the novelty and complexity of the issues presented, and the skill required to perform the legal services;
- The fees customarily charged in the community for similar services and the value of the services to Client;
- The amount of money or value of property involved and the results obtained;
- The time constraints imposed by Client and other circumstances, such as an emergency closing, the need for injunctive relief from the court, or substantial disruption of other office business;
- The nature and longevity of Firm's professional relationship with Client;
- The experience and expertise of the attorneys performing the services; and
- The extent to which office procedures and systems have produced a high quality product efficiently.

3. Interim billings may be submitted to Client from time to time in the event that the time charges of Firm other professionals exceed the initial retainer. All interim billings shall be based on the total liability of the combined group of Clients, which shall be determined pro rata to the potential liability of each Client as determined solely by Firm. Interim billings shall be due and payable upon receipt unless otherwise stated. Failure to pay interim billings promptly will permit Firm after notice to Client to terminate its representation of Client. It is understood that the hourly time charges include, but are not limited to, meetings with other Client representatives,

4. Client agrees to assume and pay for all out-of-pocket disbursements incurred in connection with this matter (e.g. filing fees, witness fees, travel, expenses of depositions, investigative expenses and other incidental expenses) either pro rata to the potential liability of each Client or directly, as Firm in its sole discretion determines is appropriate.

5. In the event that, upon either the completion of the within matter or the termination of Firm's representation of Client, the total cost of the legal services performed by Firm shall be less than the amount of any interim refundable retainer paid by Client, the balance, as determined solely by Firm, shall be refunded to Client by Firm pro rata to the amount of interim refundable retainers contributed to the Fund by all Clients.

6. Firm is subject to rules of professional conduct for the jurisdictions in which it practices, which list several types of conduct or circumstances that require or allow Firm to withdraw from representing a Client, including non payment of fees or costs, misrepresentation or failure to disclose material facts, action contrary to Firm's advice, and conflict of interest with another Client. Firm tries to identify in advance and discuss with Client any situation that may lead to Firm's withdrawal and, if withdrawal ever becomes necessary, Firm will give Client written notice of Firm's withdrawal.

7. Client may terminate Firm's representation at any time, with or without cause, by notifying Firm. If such termination occurs, Client's papers and property will be returned

to Client promptly upon receipt of payment for outstanding fees and costs as conditioned by the rules of professional conduct. Client agrees to pay for the cost of duplicating files for return to Client. Firm will retain files pertaining to this case. Client's termination of Firm's services will not affect Client's responsibility for payment of legal services rendered and out of pocket costs incurred before termination and in connection with an orderly transition of the matter.

8. Firm and Client agree that Firm has guaranteed no results to Client and that this agreement is not based upon any such promises or anticipated results.

9. The parties understand that in some cases a court may award legal fees to one party and order the other party to pay the amount awarded. Any award of legal fees is solely in the discretion of the court and cannot be relied upon with certainty. In other cases, a settlement agreement may provide that one of the parties will contribute to the other party's legal expenses, but such contribution is solely one of agreement and likewise cannot be relied upon. Client understands that it is very difficult to predict whether either of the above situations will occur. Therefore, no representation is made in this agreement that any contribution by any other party will be obtained towards Client's legal expenses. In the event, however, that such contribution is obtained for the benefit of Client, the amount in question will be credited against Firm's final bill to Client. In any case, Client is responsible to pay the bills of Firm directly.

10. We, Client and Firm, have consulted regarding the implications of representing multiple parties with differing interests and the advantages and risks involved in such a representation. A dispute solely with Boston Life would not waive the confidentiality of attorney-Client communications. However, even though there is no known dispute between the joint parties, we understand that a dispute between joint parties would cause waiver of the confidentiality of attorney-Client communications as between the joint parties. The benefits of such a joint representation arrangement include reduced costs of representation and a single defense strategy and Firm does not believe that a joint representation of parties will adversely affect the interest of any party to this representation.

11. If Client fails to pay any bill within 60 days of receipt, (simple) interest will be paid at the rate of 1% per (month). ✳

12. Firm will give prompt notice if Client's account becomes delinquent. If the delinquency continues and Client does not arrange satisfactory payment terms, Firm will withdraw from the representation and pursue collection of Client's account. Client agrees to pay the costs of collecting the debt, including court costs, filing fees and a reasonable attorney's fee.

13. If Client and Firm are unable to resolve their differences on the question of any fee, and or expenses, they hereby agree to make a good faith effort at resolving their disputes. If the dispute cannot be resolved, Client and Firm agree to place the matter before the Fee Arbitration Board of the Massachusetts Bar Association, or some other fee dispute resolution body, and agree to be bound by the decision.   *BE CHARGED INDIVIDUALLY FOR*

✳ *CLIENTS EXPRESSLY DO NOT AGREE TO ANY BILLINGS FOR LEGAL FEES ABOVE AND BEYOND THEIR PRO-RATA SHARE FROM THE ESCROW CORPUS. ONCE THE CORPUS*

CLIENT UNDERSTANDS AND ACKNOWLEDGES THAT NO LEGAL
REPRESENTATION, APPEARANCE, OR PREPARATION WILL BEGIN IN THIS
MATTER UNTIL PAYMENT ON ACCOUNT AS SET FORTH IN PARAGRAPH
ONE IS PAID IN FULL.

THIS STATEMENT SETS FORTH THE STANDARD TERMS OF OUR
ENGAGEMENT AS YOUR ATTORNEYS. UNLESS MODIFIED IN WRITING BY
MUTUAL AGREEMENT, THESE TERMS ARE AN INTEGRAL PART OF OUR
AGREEMENTS WITH YOU. THEREFORE WE ASK THAT YOU REVIEW THIS
STATEMENT CAREFULLY AND CONTACT US PROMPTLY IF YOU HAVE ANY
QUESTIONS. WE SUGGEST THAT YOU RETAIN THIS STATEMENT IN YOUR
FILE

We, Client and Firm, have read this Fee Agreement and agree to its terms and have
signed it as our free act and deed on this 25 day of _April_, 2006.

_____ MANAGER                    _____
Client DANIEL P. BUTTAFUOCO, LLC          Firm

144 WOODBURY RD
Address

WOODBURY, N.Y. 11797
Address

(516) 746-8100
Telephone Number(s)

Cordan96@aol.com
Email Address

Client acknowledges receipt of a copy of this Fee Agreement.

_____                    _____
Client                            Date

THIS IS A LEGALLY BINDING CONTRACT. ASK TO HAVE EACH TERM YOU
DO NOT UNDERSTAND FULLY EXPLAINED TO YOU SO THAT YOU
UNDERSTAND THE AGREEMENT YOU ARE MAKING.

L:\Litigation\Contract\Employers Indv\06E151171X\Engagement E1.doc



**DANIEL P. BUTTAFUOCO, LLC**
144 WOODBURY ROAD, 2ND FLR
WOODBURY, NY 11797

FLEET BANK
SYOSSET

4/25/2006

M&A Trust Account

Four Thousand One Hundred Sixty and 49/100 DOLLARS

M&A Trust Account

legal fees

1380

**DANIEL P. BUTTAFUOCO, LLC**
M&A Trust Account

4/25/2006          4,160.49

CHECK LLC 9418   legal fees

1380

**DANIEL P. BUTTAFUOCO, LLC**
M&A Trust Account

4/25/2006          4,160.49

4,160.49

CHECK LLC 9418   legal fees



# Employers International

November 30, 2005

Daniel P. Buttafuoco
144 Woodbury Rd.
Woodbury, NY 11797

Membership ID#A11011101
Policy#DI-AB002-1204-143

Reference Your Supplemental Disability Coverage

We recently received a semi-annual review of the reserve value of your supplemental insurance coverage and have attached it to this letter. **(Note. This analysis only contains contributions received and processed by the carrier prior to March 31, 2005.)**

In summary, 94% of each premium dollar contributed is invested by the carrier to cover future claims. If you do not make any claims during the five year period following your first contribution, you are eligible to request a refund of premium. You should contact your tax professional to discuss the tax implications of such an event. Your refund will be based on the unused reserve value less claims if any at that time. Essentially, that will be 94% of your premium contributions plus growth less expenses and claims.

| Total Premium | As of today | 94% | 3/31/2005 Unused Reserves | 9/30/2005 Unused Reserve |
|---|---|---|---|---|
| $75,250 | November 30, 2005 | $70,735.00 | $75,097.77 | $75,391.97 |

Each offers a per occurrence liability limit with an aggregate total. Coverage is 300% of a current year's premium, plus unused reserves, and limited to 75% of a current year's premium per each claim.

The term of coverage is for a minimum of five years. During this time the level of benefits will fluctuate throughout the term (based on any current year's premium and unused reserves). However, premiums must be paid over the entire five-year period in order to be eligible for any possible refund of unused reserves after 60 months od inception.

In addition, during the five-year term of benefits, any assessments made but not paid may result in cancellation of benefits retrospective to the first day of coverage. In an event of cancellation, (except in circumstances of fraud) unused reserves will be refunded to the client.

Employers International, 2287 West Eau Gallie Blvd, Suite B - Melbourne, Florida 32935-3184
Telephone (321) 752-7400    Fax (321) 752-7466    Toll Free (877) 776-6829



# Employers International

December 01, 2005

Kristen Buttafuoco
WKNB Productions, LLC
144 Woodbury Rd.
Woodbury, NY 11797

Membership ID#A11011102
Policy#SR-AB002-1204-145

Reference Your Supplemental Coverage

We recently received a semi-annual review of the reserve value of your supplemental insurance coverage and have attached it to this letter. (Note. **This analysis only contains contributions received and processed by the carrier prior to September 30, 2005.)**

In summary, 94% of each premium dollar contributed is invested by the carrier to cover future claims. If you do not make any claims during the five year period following your first contribution, you are eligible to request a refund of premium. You should contact your tax professional to discuss the tax implications of such an event. Your refund will be based on the unused reserve value less claims if any at that time. Essentially, that will be 94% of your premium contributions plus growth less expenses and claims.

| Total Premium | As of today | 94% | 3/31/2005 Unused Reserves | 9/30/2005 Unused Reserve |
|---|---|---|---|---|
| $30,350 | December 01, 2005 | $28,529.00 | $30,805.64 | $30,906.37 |

Each offers a per occurrence liability limit with an aggregate total. Coverage is 300% of a current year's premium, plus unused reserves, and limited to 75% of a current year's premium per each claim.

The term of coverage is for a minimum of five years. During this time the level of benefits will fluctuate throughout the term (based on any current year's premium and unused reserves). However, premiums must be paid over the entire five-year period in order to be eligible for any possible refund of unused reserves after 60 months od inception.

In addition, during the five-year term of benefits, any assessments made but not paid may result in cancellation of benefits retrospective to the first day of coverage. In an event of cancellation, (except in circumstances of fraud)

# International Association of Professional Benefits

## Semi–Annual Review

September 30, 2005

**Employers International**
2287 West Eau Gallie Blvd, Suite B
Melbourne, Florida 32935

## Certificate Details:

| | |
|---|---|
| Plan Type: | Supp. Special Business Risk |
| Member Name(s): | Law Practice Management Consultants, LLC |
| | |
| Payments Received: | $94,329.00 |
| Claims Paid: | 0.00 |
| Unused Reserve Value: | $101,726.29 |

### Understanding Your Supplemental Casualty Semi-Annual Review:

Your Supplemental Casualty benefit program is a cost effective way to obtain supplemental benefits. Unlike traditional insurance, reserves in the Supplemental Casualty program grow for your benefit.

During the term of your benefit program, you will receive semi-annual reviews on or around April 31st and October 31st. These reviews reflect all payments received, any paid claims and fluctuations in the value of the reserves.

If you have any questions please do not hesitate to contact your Association Membership Representative (AMR) or the association that sponsors your Supplemental Casualty program.

Terms –

- Paid Claims – Claims that have been paid over the most recent semi-annual term.

- Unused Reserve Value – Value of reserves at the end of the most recent semi-annual period.

Belmont Chambers • P.O. Box 3443 • Road Town, Tortola • British Virgin Islands

FAXED TO ATTY ON ~11/6/08~

CONFORMED ON _____

At the IAS Part 8 of the Supreme Court of the State of New York, held in and for the County of Nassau, at the Courthouse located at 100 Supreme Court Drive; Mineola, N.Y. 11501 on the 6th day of Nov. 2008.

P R E S E N T: Hon. **HON. R. BRUCE COZZENS, JR.**

SUPREME COURT OF NEW YORK
COUNTY OF NASSAU

MOTION SEQUENCE # ____1____

ORIGINAL RETURN DATE 11/14/08

RELIEF: OOTH

-------------------------------------------------------------X

LAW PRACTICE MANAGEMENT CONSULTANTS, LLC,
WKNB PRODUCTIONS, LLC and DANIEL P.
BUTTAFUOCO and ASSOCIATES, PLLC, DANIEL P.
BUTTAFUOCO, LLC, and DANIEL P. BUTTAFUOCO,

Index No. 18651/2008

Plaintiffs,

ORDER TO SHOW
CAUSE

Cozzens

v.

M&A COUNSELORS & FIDUCIARIES, LLC and C.
WILLIAM HOILMAN,

Defendants.

-------------------------------------------------------------X

Upon the annexed affirmation of Anastasios P. Tonorezos dated the 31st day of October, 2008, together with all of the exhibits annexed thereto, and all of the pleadings and proceedings had herein it is hereby,

**ORDERED** that the plaintiffs show cause before this Court on the _14th_ day of _Nov._ 2008 at 9:30 o'clock in the forenoon of that day at IAS Part _8_, at the Courthouse located at 100 Supreme Court Drive; Mineola, N.Y. 11501, or as soon thereafter as counsel can be heard, why an Order should not be entered (1) pursuant to CPLR § 3012(d) ordering that defendants M&A Counselors & Fiduciaries, LLC, and C. William Hoilman's time to appear in this action is

ENTERED
IN
COMPUTER

JT

2008 NOV -5  AM 9:17

3401775.1

extended up to an including January 12, 2009, (2) for such other and further relief as this Court may deem just and proper, and it is further,

**ORDERED**, that Plaintiffs are directed not to file for a Default Judgment pending entry pending determination of an Order and ruling on Defendants' motion, and it is further,

**ORDERED**, that service of this Emergency Order to Show Cause and the papers upon which it is to be granted be deemed sufficient upon service of said papers by _CPLR 2103_ _____ to all parties on or before the _10th_ day of _Nov._ 2008.

ENTER:

J.S.C.

3401775.1

SUPREME COURT OF NEW YORK
COUNTY OF NASSAU
------------------------------------------------------------------------ X
LAW PRACTICE MANAGEMENT CONSULTANTS, LLC,
WKNB PRODUCTIONS, LLC and DANIEL P.                          Index No. 18681/2008
BUTTAFUOCO and ASSOCIATES, PLLC, DANIEL P.
BUTTAFUOCO, LLC, and DANIEL P. BUTTAFUOCO,

           Plaintiffs,               AFFIRMATION IN
                    SUPPORT OF
                    DEFENDANTS'
       v.                                               EMERGENCY ORDER
                    TO SHOW CAUSE

M&A COUNSELORS & FIDUCIARIES, LLC and C.
WILLIAM HOILMAN,

           Defendants.
------------------------------------------------------------------------ X

    ANASTASIOS P. TONOREZOS, an attorney duly admitted to practice before the courts

of the State of New York, hereby affirms under the penalty of perjury pursuant to CPLR § 2106

as follows:

    1.   I am associated with the law firm of Wilson, Elser, Moskowitz, Edelman &

Dicker LLP, attorneys for the defendants M&A Counselors and Fiduciaries, LLC and C. William

Hoilman (collectively "Defendants"), in the above-entitled action. As such, I am fully familiar

with the facts and circumstances surrounding this action based upon the files maintained in our

office and discussions with Mr. Hoilman.

    2.   This affirmation is submitted in support of Defendants' motion pursuant to CPLR

§ 3012(d), seeking an order enlarging Defendants' time to answer, move, appear, or otherwise

respond to Plaintiffs' Complaint.

    3.   This office was very recently retained by Defendants' lawyers' liability insurance

carrier to represent Defendants' in this action. We were initially contacted via telephone on

October 21, 2008. We received a copy of the Complaint on or about October 27, 2008. During

3401775.1

the last two days, we have been obtaining various materials relating to this matter and have begun our investigation. A copy of the Summons and Complaint is annexed as Exhibit A.

4.      On October 28, 2008, this office phoned Plaintiff's counsel, Shawn Alfano, who is apparently an Associate with the law firm of Plaintiff Daniel P. Buttafuco and Associates, PLLC, to request an extension of our time to appear on the grounds that we had only been retained days earlier and that we needed time to evaluate this matter. We explained that in light of the various pending litigations and our recent receipt of the file, we required more time to evaluate the claim and serve a response.

5.      Mr. Alfano advised that he would stipulate to an extension of time to Answer on the condition that this firm, on behalf of the Defendants, waive any defense as to personal jurisdiction.

6.      We communicated to Mr. Alfano that because Defendants are not residents of the State of New York and maintain their offices in the Commonwealth of Massachusetts, we could not waive any defense relating to personal jurisdiction, and required additional time to assess this request as well as the allegations.

7.      Yesterday, October 30, 2008, Your Affirmant communicated again with Mr. Alfano via e-mail as well as via telephone in order to follow up on our request for an extension.

8.      After speaking with Mr. Alfano, he advised that he would need until the end of the day to provide a response to our request. Mr. Alfano returned the telephone call and advised that he did not have authority to extend the professional courtesy of an extension. A copy of the confirming E-mail is annexed hereto as Exhibit "B".

9.     According to the Complaint, the underlying dispute arises out of a "'Refund Plus' type of 'Supplemental Business Risk' insurance policy issued by Boston Life and Annuity Company, Ltd." Compl. ¶¶ 13-16. According to Plaintiffs "the policies issued... were sold and designated in such a way that the premiums would be invested in income producing and/or growth oriented financial assets and, after a stated period if no claims were made, the premiums and all gains would be refunded to the policyholders..." Compl. ¶ 16. Also according to the Complaint, sometime in 2006, Boston Life unilaterally terminated the policies and kept the premiums paid in violation of the agreement that policyholders would get a "Refund Plus". Compl. ¶ 16.

10.     According to the Complaint, on or about March 23, 2006, Boston Life brought a declaratory judgment action in the British Virgin Islands to terminate the policies and keep the premiums. Compl. ¶ 22. Shortly thereafter, Plaintiff Daniel P. Buttafuoco met with Mr. Hoilman to obtain representation for the lawsuit and against Boston Life. Compl. ¶ 24. Now, in the instant action, Plaintiffs claim that Defendants committed malpractice and were negligent in their representation of Plaintiffs therein. Compl. ¶ 38.

11.     Our preliminary investigation into the matter reveals that there are currently no less than three (3) actions pending that relate to Refund Plus, including lawsuits in the Commonwealth of Massachusetts, the State of Florida, and the British Virgin Islands High Court.

12.     As recently as yesterday, October 30, 2008, a hearing on an Order to Show Cause and Motion to Compel was held before the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida. The Miami matter relates to the within action and is referred to in Plaintiffs' Complaint.

13.     In addition, earlier yesterday, our office forwarded to Mr. Alfano a copy of a recent decision in the litigation pending in the British Virgin Islands High Court that directly relates to the allegations brought in the within action. A copy of the E-mail with attachment is annexed hereto as Exhibit "C".

14.     Before we can properly respond to the Complaint we need sufficient time to review the Complaint's allegations, review the voluminous files from the underlying litigations, review the materials relating to the Refund Plus program, evaluate and assess the status of the related actions, and research the appropriate points of law.

15.     It is submitted that Plaintiffs would suffer no prejudice by extending Defendants' time to respond to the Complaint.

16.     The Second Department has routinely held that in situations like the one at bar, a trial court can properly exercise its discretion and grant extension pursuant to CPLR 3012(d). *See Bunch v. Dollar Budget, Inc.,* 12 A.D.3d 391, 783 N.Y.S.2d 829 (2nd Dept. 2004), *Sippin v Gallardo,* 287 A.D.2d 703, 703-704, 732 N.Y.S.2d 62 (2nd Dept. 2001), *Khanna v. Premium Food & Sports Enter.,* 279 A.D.2d 508, 720 N.Y.S.2d 349 (2nd Dept. 2001). The same result should be reached herein.

17.     No prior application for the instant relief has been previously requested of this Court.

**WHEREFORE,** it is respectfully requested that this Court grant the motion of the defendants M&A Counselors and Fiduciaries, LLC and C. William Hoilman pursuant to CPLR § 3012(d), for an order enlarging their time to answer, move, appear, or otherwise respond to the Complaint up to and including January 12, 2009.

Dated: New York, New York
      October 31, 2008

Yours, etc.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By:                     
    Thomas W. Hyland
    Anastasios P. Tonorezos
    *Attorneys for Defendants*
    *M&A Counselors and Fiduciaries, LLC and*
    *C. William Hoilman*
    150 East 42nd Street
    New York, New York 10017-5639
    (212) 490-3000
    File No. 05935.00071

TO:    Shawn M. Alfano, Esq.
        *Attorney for Plaintiffs*
        144 Woodbury Road
        Woodbury, NY 11797
        (516) 746-8100

# EXHIBIT "A"

# Plaintiff's Summons and Verified Complaint

# EXHIBIT "B"

**Tonorezos, A. Ernest**

**From:** Tonorezos, A. Ernest
**Sent:** Thursday, October 30, 2008 6:05 PM
**To:** 'attnyalf@optonline.net'
**Subject:** RE: Law Practice Management Consultants, LLC/M&A Counselors & Fiduciaries, LLC

Dear Shawn:

Thank you for returning my telephone call and e-mail. This will confirm our conversation of this afternoon that you will not be providing us with an extension of time to answer, move, or otherwise respond to the Complaint. As I mentioned, we will draft and file and Order to Show Cause with the Court requesting an extension of time.

Please let me know if you have any questions or comments. I will prepare the papers tonight for filing with the Court.

Best regards,

Ernie Tonorezos

A. Ernest Tonorezos
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017-5639
p 212-490-3000 x2081
f 212-490-3038
ernest.tonorezos@wilsonelser.com

---

**From:** Tonorezos, A. Ernest
**Sent:** Thursday, October 30, 2008 11:31 AM
**To:** 'attnyalf@optonline.net'
**Subject:** RE: Law Practice Management Consultants, LLC/M&A Counselors & Fiduciaries, LLC

Dear Shawn: Thank you for providing a copy of the Affidavit of Service. As promised, I attach a copy of the Order I referred to yesterday during our telephone conversation.

In light of the fact we just received a copy of the Complaint and are currently attempting to gather as many facts relating to the various actions across the east coast as well as the BVI High Court, I ask again for an extension of time to answer, move, or otherwise respond to the Complaint, up to and including December 15, 2008. I note that you asked that I waive any potential personal jurisdiction defense, but as Mr. Hoilman is located in Massachusetts and we have yet to receive enough information relating to the claims, I do not believe it is a proper decision to waive any defenses at this time. I hope you can appreciate that assessment as we are very early in our investigation.

Please let me know today if you will execute a stipulation extending our time to respond. As I mentioned, although we prefer to avoid any motion practice, including an Order to Show Cause to extend our time to respond, because we must protect all interests, I must begin preparation today if we cannot agree to the extension

It was a pleasure speaking with you on the telephone yesterday, and I have no doubt we will have a great working relationship. Please let me know today regarding the extension of time to respond.

Best regards,
Ernie

A. Ernest Tonorezos
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017-5639
p 212-490-3000 x2081
f 212-490-3038
ernest.tonorezos@wilsonelser.com

---

**From:** Tonorezos, A. Ernest
**Sent:** Wednesday, October 29, 2008 10:56 AM
**To:** 'attnyalf@optonline.net'
**Subject:** Law Practice Management Consultants, LLC/M&A Counselors & Fiduciaries, LLC

Shawn: Thanks for calling me back. I will scan the decision I referred to and e-mail to you in a few minutes. Please forward the affidavit of service. Thanks, and I will be back in touch shortly.

**Best,**
**Ernie**

A. Ernest Tonorezos
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017-5639
p 212-490-3000 x2081
f 212-490-3038
ernest.tonorezos@wilsonelser.com

# EXHIBIT "C"

## Tonorezos, A. Ernest

| | |
|---|---|
| **From:** | Tonorezos, A. Ernest |
| **Sent:** | Thursday, October 30, 2008 11:31 AM |
| **To:** | 'attnyalf@optonline.net' |
| **Subject:** | RE: Law Practice Management Consultants, LLC/M&A Counselors & Fiduciaries, LLC |

**Attachments:** BVI Ct. Order.PDF

Dear Shawn: Thank you for providing a copy of the Affidavit of Service. As promised, I attach a copy of the Order I referred to yesterday during our telephone conversation.

In light of the fact we just received a copy of the Complaint and are currently attempting to gather as many facts relating to the various actions across the east coast as well as the BVI High Court, I ask again for an extension of time to answer, move, or otherwise respond to the Complaint, up to and including December 15, 2008. I note that you asked that I waive any potential personal jurisdiction defense, but as Mr. Hoilman is located in Massachusetts and we have yet to receive enough information relating to the claims, I do not believe it is a proper decision to waive any defenses at this time. I hope you can appreciate that assessment as we are very early in our investigation.

Please let me know today if you will execute a stipulation extending our time to respond. As I mentioned, although we prefer to avoid any motion practice, including an Order to Show Cause to extend our time to respond, because we must protect all interests, I must begin preparation today if we cannot agree to the extension.

It was a pleasure speaking with you on the telephone yesterday, and I have no doubt we will have a great working relationship. Please let me know today regarding the extension of time to respond.

Best regards,
Ernie

A. Ernest Tonorezos
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017-5639
p 212-490-3000 x2081
f 212-490-3038
ernest.tonorezos@wilsonelser.com

**From:** Tonorezos, A. Ernest
**Sent:** Wednesday, October 29, 2008 10:56 AM
**To:** 'attnyalf@optonline.net'
**Subject:** Law Practice Management Consultants, LLC/M&A Counselors & Fiduciaries, LLC

Shawn: Thanks for calling me back. I will scan the decision I referred to and e-mail to you in a few minutes. Please forward the affidavit of service. Thanks, and I will be back in touch shortly.

Best,
Ernie

A. Ernest Tonorezos
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 East 42nd Street
New York, NY 10017-5639
p 212-490-3000 x2081
f 212-490-3038
ernest.tonorezos@wilsonelser.com

10/30/2008

The Eastern Caribbean Supreme Court

In the Court of Appeal

British Virgin Islands

High Court Civil Appeal No. 5 of 2007

BETWEEN:

Employers International and Others

Appellants

and

Boston Life and Annuity Company Ltd.

Respondent

Certificate of Result of Appeal

This appeal was heard on 29th January, 2008 before His Lordship, The Hon. Mr. Hugh A. Rawlins, Chief Justice in the presence of Mr. Martin S. Kenny for the appellants except Darrel W. Daugherty and Dr. Gerardo Aguirre, the 19th and 25th appellants on the notice of appeal and Mr. Michael J. Fay for the Respondent

I HEREBY CERTIFY that an Order was made as follows:

1. The application by Boston Life to strike out the appeal for non-compliance with the "unless order" is dismissed with no order as to costs.

2. The application by Boston Life to strike out the appeal on the ground that the appeal was a nullity because of non-compliance with rule 62.10(1) of CPR 2000 is dismissed with no order as to costs.

3. The application by the JSA defendants for an extension of time within which to file their evidence and skeleton arguments in support of their appeal is granted with costs to Boston Life to be assessed pursuant to rule 65.11 of CPR 2000.

4. Consequentially, the application by Boston Life to strike the JSA defendants application for the extension of time within

which to file their evidence and skeleton arguments in support of their appeal is dismissed with no order as to costs.

5. The appeal by the JSA defendants against the order of the master dated 26th March 2007 is granted with no order as to costs and the matter is remitted to the High Court for directions to be issued by a master or a judge.

Dated the 21st day of October, 2008

..........................................
Chief Registrar

BRITISH VIRGIN ISLANDS

### IN THE COURT OF APPEAL

HCVAP 2007/005

BETWEEN:

### EMPLOYERS INTERNATIONAL AND OTHERS

Appellants

and

### BOSTON LIFE AND ANNUITY COMPANY LTD.

Respondent

Before:

The Hon. Mr. Hugh A. Rawlins

Chief Justice

Appearances:

Mr. Martin S. Kenny for the Appellants, except Darrell W. Daugherty and Dr. Gerardo Aguirre, the 19th and 25th Appellants on the Notice of Appeal
Mr. Michael J. Fay for the Respondent

---

2008: January 29;
October 21.

---

*Civil Procedure – appeal against case management order of a master – applications to dismiss the appeal on grounds of failure to comply with an "unless order" and failure to file written submissions with the appeal - rule 62.10(1) of the Civil Procedure Rules 2000 ("CPR 2000") – application by appellants for an extension of time to file written submissions – whether appeal should be dismissed or whether time should be extended – whether the appeal should be allowed against the case management order – rules 26.8, 26.9, 29.1(2)(k) and 42.10 of CPR 2000*

Boston Life and Annuity Company Limited, ("Boston Life") the respondent, is the claimant in the substantive claim. The claim was brought against 63 defendants, including the appellants who number about 53, and who are represented by the firm of J.S. Archibald and Co. ("the JSA defendants"). Boston Life sought a declaration that it (Boston Life) had terminated a policy of insurance between it and the defendants. Boston Life also sought a consequential declaration that it was not liable to repay to any of the defendants any part of the premium on that policy. The defendants eventually counterclaimed and Boston Life filed a reply and defence to the counterclaim.

In the interim, Boston Life had applied for summary judgment. The master issued case management directions and fixed a date for the hearing of that application. Among other things, the case management directions required the defendants to file evidence and skeleton arguments by a specified date. The JSA defendants failed to comply with these directions. Instead, they applied for an extension of time to file their evidence and skeleton arguments. Subsequently, they also applied for an adjournment of the hearing of their application for extension of time. Boston Life applied for an order debarring the JSA defendants from filing their evidence and skeleton arguments. The master dismissed the applications by the JSA defendants and retained the date which was prior set for hearing Boston Life's application for summary judgment. The JSA defendants appealed.

The Full Court of Appeal granted leave to appeal the master's order to the JSA defendants and stayed the summary judgment order which a judge had by then granted to Boston Life. The JSA defendants filed the appeal within the stipulated time. However, contrary to rule 62.10(1) of CPR 2000, they did not file written submissions with the appeal. Boston Life applied for orders dismissing the appeal on the ground that the appeal was a nullity because of this non-compliance, as well for failure by the JSA defendants to comply with an "unless order" of this court. On the other hand, the JSA defendants applied for an order extending the time to file their written submissions.

Held: dismissing Boston Life's applications to dismiss the appeal with no order as to costs; granting the JSA defendants' application to extend time for filing their written submissions for the appeal with no order as to costs; granting the JSA defendants' application for extension of time to file and serve their evidence and skeleton arguments in the application for summary judgment and awarding costs to Boston Life to be paid by the JSA defendants under rule 65.11(3)(c) of CPR 2000 in this application; and allowing the appeal by the JSA defendants against the order of the master with no order as to costs:-

(1) The caption and an aspect of the text of the written submissions which the JSA defendants filed on 24th October 2007 indicated that those submissions were filed in compliance with the directions in the order of 9th October 2007, which was the basis on which the "unless order" was made. The "unless order" did not therefore take effect to strike out the appeal automatically. Inasmuch as the filed submissions opposed the application to dismiss the appeal and supported their application to extend time, the JSA defendants had, in effect, showed cause why the appeal should not have been automatically dismissed on the "unless order".

(2) The fact that an appellant does not file written submissions with a notice of appeal in a procedural appeal does not prevent the court from having jurisdiction in the appeal. Non-compliance with rule 62.10(1) of CPR 2000 does not therefore render an appeal a nullity. The court has jurisdiction, in an appropriate case, to retrospectively extend time to file written submissions notwithstanding the provision of rule 62.10(1) of CPR 2000.

2

Craig Reeves v Platinum Trading Management Limited, St. Kitts and Nevis Civil Appeal No. 22 of 2007 (25th February 2008) applied.

(3) In the present case, Boston Life would not have been prejudiced in the appeal by the filing of the written submissions by the JSA defendants on 17th August 2007. The court would, therefore, without resorting to the provisions and criteria in rule 26.8 of CPR 2000, make an order to put the matter right under rule 26.9 of CPR 2000, and, thereby, extend the time for filing the written submissions to the date when they were filed. The result would be the same even if the court were to resort to the provisions and criteria in rule 26.8 of CPR 2000.

(4) The appeal against the master's order is allowed because in the circumstances of the present case the master should have permitted the JSA defendants to file their evidence and written submissions in the summary judgment application by Boston Life. This is because the summary judgment hearing was scheduled quite early in the proceedings; the JSA defendants were many, in the main resided outside of the jurisdiction and the material from which the evidence had to be compiled was voluminous; solicitors for the JSA defendants were prepared to give an undertaking to file and serve the evidence almost immediately, and given the significance of the case.

## JUDGMENT

[1]    RAWLINS, C.J.: On 29th January 2008 the substantive appeal as well as 3 interlocutory/procedural applications in these appeal proceedings came before me, as a single judge of this court. I determined 2 of the applications orally and reserved judgment on the other application and on the substantive appeal. Counsel for the JSA defendants sought leave to make further written submissions. I directed both parties to file written submissions by dates in February 2008. The parties complied and I received them in March 2008. At the outset I apologize to the parties for the delayed delivery of this judgment, which was occasioned by the structural changes which occurred at the court during the course of this year.

[2]    In the substantive appeal, the appellants, the JSA defendants, appealed against a case management order which Master Cottle made on 28th March 2008. The master's order, among other things, dismissed an application by the JSA defendants for an extension of time to file and serve their evidence and written

3

submissions for the hearing of a summary judgment application. Boston Life brought this application against the JSA defendants and 5 of the others. The Full Court of Appeal granted leave to appeal the master's order.[1]

[3]     The JSA defendants filed their notice of appeal within the time stipulated by the order of the Full Court. However, they did not file their written submissions with the appeal. Rule 62.10(1) of CPR 2000 requires an appellant to file written submissions with the notice of appeal. The respondent, Boston Life applied to strike out the appeal as a nullity because the written submissions were not filed with the appeal. For their part, the JSA defendants applied for an order extending the time within which to file their written submissions.

[4]     In the course of these proceedings a single judge of this court issued an "unless order" stating that the appeal would have been dismissed automatically if the JSA defendants did not comply with directions that I had previously given. The single judge issued the "unless order" because of what appeared to have been the non-compliance by the JSA defendants with my prior order. Boston Life applied to have the appeal deemed dismissed for the apparent non-compliance. At the oral hearing on 29th January 2008, I dismissed this application. I also held that the fact that an appellant does not file written submissions with a notice of appeal in a procedural appeal does not prevent the court from having jurisdiction in the appeal. That decision meant, in effect, that non-compliance with rule 62.10(1) of CPR 2000 does not render an appeal a nullity.

**This judgment**

[5]     First, this judgment provides a short background to the appeal and the 3 applications. In the second place, this judgment affords a fuller perspective on the applications, and, in doing so, indicates why I dismissed Boston Life's application to strike out the appeal for failure by the JSA defendants to comply with the

---

[1] In Employers International and Others v Boston Life and Annuity Company Limited, British Virgin Islands Civil Appeal No. 5 of 2007, (4th July 2007 Ola Mae Edwards JA (Ag.)

4

"unless order". This judgment will also indicates why I held that this court has jurisdiction to hear the appeal notwithstanding that solicitors for the JSA defendants did not file and serve their written submissions with the notice of appeal. In the third place, this judgment considers the application by the JSA defendants for the order extending time to file their written submissions on the appeal. Allowing this application would require considering the substantive appeal against the order of the master.

## Background

[6]   On the 7th March 2006, Boston Life filed a claim in the High Court against 63 defendants including the JSA defendants. By that claim Boston Life sought a declaration that Boston Life had terminated a policy of insurance between it and those defendants. Boston Life also sought a consequential declaration that it was not liable to repay to any of the defendants any part of their premiums paid on that policy. Boston Life also sought further or other relief and costs.

[7]   The majority of the defendants reside overseas. The law firm of J.S. Archibald & Co. acknowledged service on behalf of the JSA defendants. There are over 50 of them. The firm filed a defence on 26th July 2006 on behalf of those defendants. However, on 24th November 2006, Boston Life filed an application for summary judgment against 62 defendants including the JSA defendants.

[8]   The master issued case management directions to facilitate the hearing of the application for summary judgment. The first such directions order was made on 24th November 2006. The master directed Boston Life to file and serve the application for summary judgment together with supporting evidence and skeleton arguments on or before 22nd December 2006. He also directed the defendants to file evidence in response and skeleton arguments on or before 12th January 2007. Additionally, he ordered Boston Life to file skeleton arguments in response (if

5

necessary) on or before 22nd January 2007.  The matter was adjourned to 1st February 2007.

[9]     Neither Boston Life nor the JSA defendants fully complied with the master's order of November 2006.  Boston Life filed all of its affidavit evidence and its skeleton arguments on 17th January 2007.  The defendants did not comply with the order. However, on 9th January 2007 the defendants, excluding the JSA defendant No. 3, filed a counterclaim.  They thereby sought relief, which included declarations that Boston Life breached the contract of insurance.  They also sought declarations that they (the defendants) are creditors in equity of Boston Life; that all the premiums paid constituted money had and received by Boston Life to the defendants' use.  They further sought an account of all premiums received by Boston Life from them (the defendants).  The defendants estimated this to be about US$10 million.  They also sought ancillary orders.  The JSA defendants filed an amended counterclaim on 18th January 2007.  Boston Life filed a reply and defence to counterclaim on 24th January 2007.

[10]    On 1st February 2007 the master issued further directions.  He ordered the defendants to file evidence in response and skeleton arguments on or before 6th March 2007.  He also directed Boston Life to file and serve evidence in response (if necessary) on or before 21st March 2007.  The master listed the summary judgment application for hearing before a judge on 3rd April 2007.  However, on 7th March 2007 the JSA defendants applied for an order extending the time to file and serve their evidence and skeleton arguments.  This application was served on Boston Life on 14th March 2007.  The hearing was scheduled for 26th March 2006.

[11]    In the meantime, on 9th March 2007, Boston Life applied for an order debarring the JSA Defendants from filing evidence and/or skeleton arguments in response to the summary judgment application.  On 22nd March 2007 the JSA defendants applied for an adjournment of the hearing of their own application for extension of time. They served it on 23rd March 2007.  Their application for adjournment was brought

6

on 2 main grounds. One ground was that Dr. Archibald, who had carriage of the application for extension of time, was appearing in the Privy Council on 29th March 2007 in the unrelated Nam Tai litigation. Mr. Fay who had carriage for Boston Life was also due to appear in the Privy Council in the same litigation. The other main ground was that solicitors for the JSA defendants had experienced some difficulties getting in all of the evidence from the many defendants whom they represent.

[12]    In summary, the applications which the Master heard on 26th March 2007 were:

(i)     The JSA defendants' application, filed on 7th March 2007, which sought an extension of time to the 15th March 2007 to file and serve their affidavit evidence and skeleton argument for the summary judgment hearing. When this application was made the hearing of the summary judgment application was already scheduled for the 3rd April 2007.

(ii)    Boston Life's application of 9th March 2007 for an order debarring the JSA defendants from filing their evidence and skeleton arguments.

(iii)   The JSA defendants' application, filed on the 22nd March, 2007, for the adjournment of the hearing of their own application for extension of time.

[13]    When the master heard these applications on 26th March 2007 he made the following order:

1.      The defendants' application for an adjournment of the two notices of application listed for 26th March 2007 is dismissed.

2.      The defendants' application for an extension of time to file their evidence and submissions is dismissed.

3.      The defendants are to file and serve submissions with authorities by the close of business on 27th March, 2007.

4.      If the defendants fail to file and serve their submissions by the close of business on 27th March, 2007, the defendants are debarred from making oral submissions at the hearing on 3rd April 2007.

5.      The hearing date of the substantive matter on 3rd April 2007 is retained.

This is the order which is the subject of the substantive appeal in these proceedings.

7

[14]   This was an interlocutory order, which required leave to appeal. The Full Court of Appeal granted leave to appeal on 4th July 2007. Hariprashad-Charles J had already granted summary judgment in favour of Boston Life on 14th May 2007. The order of the Full Court, which granted leave to appeal, stayed the summary judgment order pending the determination of the appeal. The master did not provide any reasons for his decision. The Full Court also ordered the production of the master's notes of the hearing of 26th March 2007 for the hearing of the appeal. The hearing and determination of the appeal against the master's order of 26th March 2007 was delayed, however, because the 3 procedural applications were filed in the appeal proceedings. It became necessary to determine these 3 applications before considering the substantive appeal.

The "unless order" application

[15]   It was on 20th November 2007 that Ola Mae Edwards JA (Ag.) issued the "unless order" against the JSA defendants. The order stated that the appeal would be automatically dismissed unless by 28th November 2007 the JSA defendants complied with paragraphs 1 and 2 of an order that I issued on 9th October 2007. Paragraph 1 of my order of 9th October 2007 directed solicitors for the JSA defendants to show cause, by way of written submissions, why their appeal should not be struck out for failure to comply with rule 62.10(1) of CPR 2000. Paragraph 2 of the order directed the JSA defendants to file and serve those written submissions showing cause by 26th October 2007. Boston Life applied for an order dismissing the appeal on the ground that the JSA defendants failed to show cause why the appeal should not be struck out for failure to comply with that "unless order".

[16]   On 24th October 2007 solicitors for the JSA defendants filed written submissions. These were, in substance, in opposition to Boston Life's application to strike out the appeal. These submissions supported their application to extend time to file their written submissions, which they should have filed with their appeal. I dismissed Boston Life's application to strike out the appeal for non-compliance

8

with the "unless order" particularly because the title and the text of the written submissions which the JSA defendants filed on 24th October 2007 recited that those submissions were filed in compliance with my directions in the order of 9th October 2007.  I held that on this basis the "unless order" did not take effect to strike out the appeal automatically.  It seems that by filing submissions that opposed the application to strike out and which supported their application to extend time, the JSA defendants had, in effect, showed cause why the court should not have struck out the appeal.

### Boston Life's nullity application

[17]   Solicitors for Boston Life contended that the failure by the JSA defendants to file their written submissions with the notice of appeal rendered the appeal a nullity. Although the JSA defendants filed the notice of appeal on 18th July 2007, within the time stipulated, they filed their written submissions on 17th August 2007 and served them on 20th August 2007.

[18]   It is trite principle, often re-stated by this court, that the failure of an appellant, on a procedural appeal, to seek the leave of the court to appeal, before filing the notice of appeal, renders the appeal a nullity.  Such an appeal will be struck out.  In the course of the oral decision on 29th January 2008, however, I held that this court has jurisdiction, in an appropriate case, to retrospectively extend time to file written submissions notwithstanding the provision of rule 62.10(1) of CPR 2000.  This decision means that an appeal is not rendered a nullity for failure to file written submissions with the notice of appeal.  Clear authority for this is provided in the decision of the Full Court of Appeal in **Craig Reeves v Platinum Trading Management Limited.**[2]

[19]   In **Craig Reeves,** the appellant appealed against the dismissal of a forum challenge by the High Court. The respondent applied to strike out the appeal on

---

[2] St. Kitts and Nevis Civil Appeal No. 22 of 2007 (25th February 2008).

9

the ground that the appellant did not file and serve written submissions with the notice of appeal in accordance with rule 62.10(1) of CPR 2000. The Full Court, in a judgment written by Barrow JA, dismissed the application. In so doing, the court held, *inter alia*, that the failure by the appellant to file written submissions with the notice of appeal did not render the appeal a nullity because such non-compliance is trifling. The result was that such an appeal was still live because the notice of appeal did not depend for effect on being accompanied by written submissions. In these premises I decided to dismiss the application by Boston Life to strike out the appeal on the ground that the appeal was a nullity because of non-compliance with rule 62.10(1) of CPR 2000.

[20] The question, then, is whether this was an appropriate case in which to extend the time for the JSA defendants to file their written submissions in this appeal.

**The application to extend time**

[21] In their application to extend the time for filing their written submissions, the JSA defendants stated as follows, in paragraphs 3 and 4:

"3. The failure of the Appellants to file written Submissions at the time of filing the Notice of Appeal did not prevent a fair trial of the issues in the Appeal. The Respondents suffered no prejudice having been aware of the Appellants' submissions before the filing on 10 September 2007 of their Application to strike out the Notice of Appeal.
4. The Court is empowered to extend the time retrospectively to 17 August 2007 for the filing of the Appellants' written submissions in support of the Notice of Appeal, or to take any necessary step to put matters right."

[22] The JSA defendants state as follows, at paragraphs 4 to 12 of the affidavit in support of their application for extension of time:

"4. The Notice of Appeal herein was filed on 18 July 2007 and served on the Legal Practitioners for the Respondents on 25 July 2007. By error the points upon which the submissions were intended to be made were incorporated in the said Notice of Appeal rather than in separate submissions. We recognised that this did not meet the requirements of CPR 62.10(1).
5. Subsequently on 17th August 2007 the Appellants filed separate written submissions and served same on the Legal Practitioners for the

10

Respondents on 20 August 2007. A copy of the filed Written Submissions are exhibited hereto and marked "A".

6. Almost one month after the [respondent was] served with the Appellants' written submissions in support of the Notice of Appeal, the Respondents on 10 September 2007 filed an Application to strike out the Notice of Appeal on the basis that the Appellants had not filed or served any written submissions in support of the appeal with the Notice of Appeal.

7. The Respondent had in fact suffered no prejudice having been aware of all our submissions before the filing on 10 September 2007 of their Application to strike out the Notice of Appeal.

8. In these circumstances the Court is empowered to extend the time retrospectively to 17 August 2007 for the filing of the Appellants' written submissions in support of the Notice of Appeal.

9. Pursuant to CPR Part 26.9 (3) if there has been an error of procedure or failure to comply with a rule, practice direction, Court Order or direction, the Court may make an Order to put matters right.

10. CPR 26.9 is applicable where no consequence for failure to comply has been specified by any rule practice direction or Court Order.

11. There is no consequence specified in CPR Part 62.10 for the failure to file written Submissions in Support of a Procedural Appeal.

12. In the circumstances the Appellants hereby apply for an extension of time to file the Written Submissions lodged on 17 August 2007 and already served on the Legal Practitioners for the Respondent."

[23] This court has stated that an applicant for an order extending the time specified by a rule would usually be required to meet the requirements of rule 26.8 of CPR 2000.[3] In doing so this court followed the decision of the English Court of Appeal in Sayers v Clarke-Walker (a firm).[4] This rule provides the guidelines which a court should consider when deciding whether a party that has defaulted in taking a procedural step in keeping with the time specified in the rules should be granted relief from sanctions for the default. Counsel for Boston Life contended that this approach is usually taken even where no sanction is provided for non-compliance with the rule that stipulates the time. To support his contention, learned counsel referred to the statement by Brooke LJ in Sayers,[5] that even where a rule does

---

[3] See, for example, Richard Frederick v Owen Joseph, Saint Lucia Civil Appeal No. 32 of 2005, and Nevis Island Administration v La Copropriete Du Navire J31, St. Christopher and Nevis Civil Appeal No. 7 of 2005 (judgment of Barrow JA delivered on 3rd April, 2006).
[4] [2002] EWCA Civ 645; [2002] 3 All E.R. 490; [2002] 1 WLR 3095.
[5] Contained in paragraph 21 of the judgment.

not expressly impose a sanction for non-compliance, the consequence for non-compliance will be exactly the same as if the rule imposed a sanction. Accordingly, the court should follow the checklist contained in English CPR 3.9, which is similar to that contained in our CPR 26.8 in determining whether to grant relief from sanctions and consequently extending time for compliance.

[24]  The court held in **Craig Reeves**, that a sanction will not result in every instance of non-compliance and where a sanction is provided it will not usually lead to the dismissal of the appeal.  Dismissal will be an exceptional course, because the object of the rules is to bring cases to trial rather than to deny them a trial. According to the court, sometimes non-compliance would be so trifling that the court is justified in rectifying the error in a summary manner, as rule 26.9 permits, without resorting to the provisions and criteria in rule 26.8 of **CPR 2000**.  In **Craig Reeves** the court held that the non-compliance did not attract a sanction, and, accordingly, in accordance with rule 26.9(3) of **CPR 2000**, the court made an order that rectified the non-compliance.  In so doing, the court distinguished **Dominica Agricultural and Industrial Development Bank v Mavis Williams**,[6] **Ferdinand Frampton v Ian Pinard**,[7] **Richard Frederick v Owen Joseph**,[8] and **Nevis Island Administration v La Copropriete Du Navire J31**.[9]

[25]  The reasoning of the Full Court in **Craig Reeves** on this issue is noteworthy. Barrow JA, who delivered the judgment stated as follows:[10]

> "Rule 26.9, which counsel for the appellant prayed in aid, states:
> '(1) This rule applies only where the consequence of failure to comply with a rule, practice direction, court order or direction has not been specified by any rule, practice direction or court order.
> (2) An error of procedure or failure to comply with a rule, practice direction, court order or direction does not

---

[6] Dominica Civil Appeal No. 20 of 2005.
[7] Dominica Civil Appeal No. 15 of 2005.
[8] Saint Lucia Civil Appeal No. 32 of 2005.
[9] St. Christopher and Nevis Civil Appeal No. 7 of 2005 (judgment of Barrow JA delivered on 3rd April, 2006).
[10] In paragraph 29 of the judgment.

invalidate any step taken in the proceedings, unless the court so order.

(3) If there has been an error of procedure or failure to comply with a rule, practice direction, court order or direction, the court may make an order to put matters right.

(4) The court may make such an order on or without an application by a party."

Counsel relied in particular on rule 26.9 (3), which he submitted, gives the court power in a case such as this to make an order to put matters right where there has been a failure to comply with a rule."

[26]    In applying the provision to the rules, Barrow JA stated:[11]

"39. I have spent some time considering the degree of non-compliance involved in this case because I wish to make the point that it is not every instance of non-compliance that will result in sanctions, express or implied. And where there is a sanction it will not usually be dismissal of the appeal, which must be an exceptional course, because the object of the rules is to bring cases to trial rather than to deny them a trial. It will sometimes be the case that non-compliance is so trifling that the court is justified in rectifying the error in a summary manner, as rule 26.9 permits, without resorting to the provisions and criteria in rule 26.8.

40. In this case, for example, counsel for the respondent wrote to counsel for the appellant to point out the failure to file accompanying written submissions and to say they would accept the submissions a day late. Counsel for the appellant complain they were not given even a working day to respond before the application to strike out was filed. Counsel for the respondent take the stance that they had previously told counsel for the appellant that this was going to be a procedural appeal so they had already given to the appellant all the time that reasonableness required. There is no need to assess the merits of the respective positions; it is sufficient to highlight the initial disposition of counsel for the respondent to accept the written submissions late (even if only 1 or 2 days late), to make the point that it is not every instance of non-compliance that calls for the imposition of a sanction. But having made that point I hasten to disavow even the faintest suggestion of general tolerance for non-compliance, be it ever so slight.

41. It is my view that non-compliance in this case should not attract a sanction but that the court, in accordance with rule 26.9 (3), should make an order to put matters right. That order would be, in essence, that the written submissions the parties respectively filed should stand as properly

---

[11] At paragraphs 39-41 of the judgment.

filed and the procedural appeal should proceed. I would thereby leave it open to the judge to whom the appeal is assigned to direct how the appeal should proceed. I would refuse the application by the respondent to strike out the appeal but would award costs to the respondent, on the basis that it was the non-compliance of the appellant that fairly led to the making of this application. I would fix such costs at $1,500.00. Finally, I would commend all counsel for the quality of their written and oral presentations."

[27]   There is no stipulated sanction for non-compliance with rule 62.10(1) of CPR 2000. Written submissions, which are filed with an appeal, are intended to assist the court, by way of reference to the applicable principles, legal analysis and authorities, to arrive at decisions that are sound, well reasoned, correct in law, reliable and not delivered per incuriam. It is understandable then that in Craig Reeves Barrow JA found the non-compliance trifling and did therefore warrant a dismissal of the appeal. It is my view that the non-compliance with rule 62.10(1) by the JSA defendants in the circumstances of the present case was also a trifling one which the court should put right by reference to rule 26.9 of CPR 2000.

[28]   It is noteworthy that solicitors for the JSA defendants actually filed their written submissions on 17th August 2007. In my view Boston Life would not have suffered any prejudice if the time for filing them were extended to that date so that the court could have relied on them in its deliberations. In the event of granting an extension it would have been open to the court to compensate Boston Life for the non-compliance by the JSA defendants. In these circumstances, I shall allow the application by JSA defendants for an order extending the time for filing the written submissions by rectifying the matter under rule 26.9 of CPR 2000. I shall accordingly extend the time for the filing of the submissions to 17th August 2007, when they were actually filed, by deeming that they were properly filed on that date. I shall therefore determine the appeal against the order of 26th March 2007.

14

The appeal against the master's order

[29]   It is settled principle that an appellate court would not easily interfere with a case management decision of a judge or master. The following statement from **Royal & Sun Alliance v T & N Limited**[8] elucidates this principle:

> "....[the] Court should not interfere with case management decisions made by a judge who has applied the correct principles, and who has taken into account the matters which should be taken into account and left out of account matters which are irrelevant, unless satisfied that the decision is so plainly wrong that it must be regarded as outside the generous ambit of the discretion entrusted to the judge."

[30]   The master exercised case management powers as well as a general discretion under rule 26.1(2)(k) of CPR 2000 when he considered the JSA defendants' application to extend the time for filing their affidavit evidence and skeleton arguments for the summary judgment application. This sub-rule states:

> "Except where these rules provide otherwise, the court may-
> (a) to (j)...
> (k) extend or shorten the time for compliance with any rule, practice direction, order or direction of the court even if the application for an extension is made after the time for compliance has passed."

[31]   The critical question is whether the master exercised his discretion under this sub-rule in accordance with the principles stated in **Royal & Sun Alliance v T & N Limited** or whether his exercise of the discretion was outside of the generous ambit of that discretion. In exercising the discretion to determine whether to extend time the master should have been guided by the relevant provisions of rule 26.8 of CPR 2000. These are sub-rules 26.8(1)-(3).

[32]   Sub-rules 26.8(1)-(3) state as follows:

> "26.8 (1) An application for relief from any sanction imposed for a failure to comply with any rule, order or direction must be-
> (a) made promptly; and
> (b) supported by evidence on affidavit
> (2) The court may grant relief only if it is satisfied that-

---

[8] [2002] EWCA Civ. 1964 Para. 38. See also Note 52.3.6 to the UKCPR which states that "permission will be granted more sparingly to appeal against case management decisions."

(a) the failure to comply was not intentional;

(b) there is a good explanation for the failure; and

(c) the party in default has generally complied with all other relevant rules practice directions, orders and directions

(3) In considering whether to grant relief, the court must have regard to-

(a) the effect which the granting of relief or not would have on each party

(b) the interests of the administration of justice;

(c) whether the failure to comply has been or can be remedied within a reasonable time;

(d) whether the failure to comply was due to the party or the party's legal practitioner; and

(e) whether the trial date or any likely trial date can still be met if relief is granted."

[33]   The master did not provide a written judgment or reasons for decision. The notes of the hearing do not disclose what the master took into consideration in arriving at his decision to dismiss the JSA defendants' applications to extend time and to adjourn the hearing.   There is therefore no analysis which shows that he considered any of the criteria which these provisions require.  There are therefore no bases on which I could determine whether he exercised his case management discretion correctly or whether his decision was plainly wrong.   It therefore becomes necessary for me to make a determination whether the master should have granted the JSA defendants' application to extend time in the circumstances of the case.

[34]   It would be remiss of me not to express concern at the increasing instances in which this court has had to consider appeals in the absence of reasons provided for the decision appealed.  Ideally, judges and masters should provide reasons when an appeal is lodged against a decision.  In any event, they should, in conjunction with the court office, ensure that case management proceedings are recorded, particularly when a court reporter is not present.  It is my suggestion that all proceedings, including case management, should be recorded systematically and the reasons reproduced when an appeal is lodged in a matter which does not have the benefit of a written judgment.

16

### Did the master err?

[35]    It is noteworthy that when the Full Court of Appeal granted leave to appeal, that court stated that it was of the view that the application for leave raises an important question of general application under the CPR, as to the matters which a judge or master should consider and weigh when deciding an application for extension of time.[12]

[36]    The central issue in the substantive appeal against the master's order revolves around the discretionary powers of the master to refuse to admit evidence in a case.  Barrow JA noted in **Tellasonera Finland OYJ v Alfa Telecom Turkey Limited**,[13] that this discretion is classically a case management power that exists to enable a judge or master to control the scope and the flow of the evidence and thereby control the conduct of the case. Barrow JA stated, however, that this type of discretion should be exercised with great circumspection, particularly because in contrast to the English rules of civil procedure, our CPR 2000 does not contain an express power to exclude admissible evidence.[14]  He found that little circumspection was needed in the circumstances of Tellasonera to decide that there was no reason to exclude the affidavit evidence because it would not have had even the slightest impact upon the conduct of the proceedings.  This, he said,[15] was because the re-filing of the affidavit in response had no impact upon the conduct of the proceedings.  Neither did it affect the preparation by counsel or the judge for the hearing of the application or the hearing date.

### The present case

[37]    Against this background it is my view that it would have been reasonable for the master to extend the time as prayed for by the JSA defendants given that the

---

[12] See per Ola Mae Edwards JA (Ag.) at paragraph 30 of the judgment.
[13] Virgin Islands Civil Appeal No. 28 of 2007 (18th December 2007), at paragraph 16.
[14] English rule 32.1(2) compared to rule 29.1 of CPR 2000.  See paragraph 16 of the judgment.
[15] See paragraph 17 of the judgment.

17

summary judgment hearing was scheduled quite early in the proceedings; taking into consideration that the JSA defendants were many and the volume of material from which the evidence had to be complied; given the fact that solicitors for the JSA defendants were prepared to give an undertaking to file and serve the evidence almost immediately and the significance of the case. I think that the circumstances of the case were such as to point to the suggestion by Barrow JA stated in Tellasonera that the master's discretion to admit or not to admit the evidence should have been exercised with great circumspection. Had the master done that, he should have permitted the JSA defendants to file their evidence and skeleton arguments within a few days even if the summary judgment hearing was adjourned for a very short time. He could have recompensed by ordering the JSA defendants to meet the costs of Boston Life for granting the application for the extension of time pursuant to rule 65.11(3)(c) of CPR 2000.

[38]   It is my view, further, that even if resort were made to the checklist provided by rule 26.8 of CPR 2000 the result should have been the same. The application for extension of time was made in a timely manner. The relevant directions are those which the master issued on 1st February 2007. By those directions the master required the JSA defendants to file their evidence and skeleton arguments for the summary judgment hearing on or before 6th March 2007. The hearing was scheduled for 3rd April 2007. Solicitors for the JSA defendants applied for the order to extend time on 7th March 2007. This was the day after they should have complied with the directions. Notwithstanding this, rule 26.8(1) was satisfied, in my view, since the application was made promptly and it was supported by evidence. Further, it does not appear that there was anything that indicates that the failure to comply with the direction was intentional. Rule 26.8(2)(a) was therefore satisfied.

[39]   Rule 26.8(2)(b) requires an applicant to provide a good explanation for failure to comply with the directions which the master gave.

18

[40]   Solicitors for the JSA defendants stated in the appeal against the master's
decision that the master erred when he refused the request by junior counsel at
the hearing on 28th March 2007 to permit them to file their affidavit evidence which
was in the possession of counsel for the JSA defendants at the time.   They
contended that the master had the power to order that unless they filed all of their
evidence and written submissions within 24 hours they would have been debarred
from relying on them at the summary judgment hearing on 3rd April 2007.   They
further contended that the master erred when he refused to grant an adjournment
of the hearing on 28th March 2007 to facilitate the presence of Dr. Archibald, their
leading counsel, who was attending to another matter before the Privy Council in
England at the time.

[41]   Mr. Fay submitted that the JSA defendants gave no satisfactory explanation as to
why it was necessary for leading counsel to appear before the master for
applications that were not complex, or why leading counsel had to be absent for
the hearing.   I agree.

[42]   The main reason given by solicitors for the JSA defendants for non-compliance
with the master's order was that their evidence in opposition to Boston Life's
application for summary judgment was quite voluminous, particularly the evidence
of one Bret Barrow.   The appeal states that counsel for Boston Life admitted at the
hearing on 28th March 2007 that he already had the evidence in his possession
from another source.

[43]   Mr. Fay admitted that at the time of this case management conference, the existing
evidence for the JSA defendants was voluminous.   He stated, however, that that
evidence was in witness statement form, and was never filed or disclosed.   He
said that the applicants had not informed the master that they intended to apply for
an adjournment of the summary judgment hearing.   The result, he said, was that
the master was unable to make an informed decision as to whether the evidence
would give rise to the need for an adjournment.   Counsel maintained that in such
circumstances the master correctly distinguished between the prejudice caused by

late filing of evidence and the mere inconvenience caused by late filing of skeleton arguments. He insisted that the master was entitled to conclude that service of the voluminous evidence, 6 days before the 3rd April 2007, was likely to jeopardize the summary judgment hearing. Mr. Fay also submitted that it would be an injustice to allow the applicants to file such evidence so close to the scheduled hearing since both parties wished the summary judgment hearing proceed on the 3rd April 2007.

[44]   On the other hand, Mr. Kenny contended, on the basis of the matters that were pleaded in the notice of appeal, that since the master was exercising his discretion in making the order, the rules mandate that the master ought to have applied the overriding objective. He submitted that based on the nature of the defence of the applicants, whereby they were challenging the policy relied on by the respondent in its claim. He said, further, that taking into consideration, additionally, that the matter concerned the sum of US$10 million premiums paid; the voluminous affidavits and exhibits that were in their possession; and counsel's preparedness and undertaking to file and serve the affidavit evidence by the following day, and the overriding objective of the rules, the master should have granted the application for adjournment and extension of time.

[45]   Mr. Kenny further submitted that the master's order was disproportionate, because it gave Boston Life an unfair advantage, while it deprived the JSA defendants of the opportunity to present their evidence at the summary judgment hearing on 3rd April 2007.  The applicants, he argued, were therefore deprived of a chance to oppose the evidence of the respondent in such a critical claim.

[46]   It is my view that viewed from the foregoing perspective, which is set out in the appeal and summarized by Mr. Kenny, the explanation proffered by solicitors for the JSA defendants for their failure to file and serve their evidence for the summary judgment was inadequate. It is my further view that the matters that are to be considered pursuant to rule 26.8(3) of CPR 2000 would reasonably have been resolved in favour of the JSA defendants. In particular, it appears that the

20

JSA defendants' failure to comply could have been remedied within a reasonable time, and the date on which the summary judgment application was scheduled for hearing could have been kept. Any delay could have been sufficiently short so as not to prejudice Boston Life. The circumstances of the case indicate to me that it would have been helpful, in the interest of the administration of justice, to afford the opportunity to all of the parties to reasonably make out their cases in an application which could have determined the claim summarily.

[47]   In the foregoing premises, I would allow the appeal by the JSA defendants against the order of the master dated 26th March 2007. However, I would order the JSA defendants to meet Boston Life's costs in the application to extend the time to file the evidence and the skeleton arguments in the court below pursuant to rule 65.11 of CPR 2000. Consequentially, notwithstanding that the JSA defendants prevailed on this appeal, I make no costs order in their favour in this appeal.

### Costs in the applications

[48]   I shall make no costs order in favour of the JSA defendants in the application by Boston Life to strike out the appeal for non-compliance with the "unless order". This is because the circumstances which led to that application arose from the default of the JSA defendants. For a similar reason, I shall make no costs order in favour of the JSA defendants in Boston Life's application to strike out the appeal on the ground that it was a nullity notwithstanding that I dismissed that application.

[49]   The application by the JSA defendants to extend the time to file their evidence and skeleton arguments for their appeal and the consequential application by Boston Life to dismiss the appeal for the non-compliance were occasioned by the default by the JSA defendants. They did not file their submissions with the appeal as the rules require. I shall therefore order the JSA defendants to meet the costs of Boston Life in the application to extend time. However, I shall make no costs order in favour of the JSA defendants in Boston Life's application to dismiss the appeal.

[50]   In summary then, the following is the order and directions in these proceedings:

1.   The application by Boston Life to strike out the appeal for non-compliance with the "unless order" is dismissed with no order as to costs.

2.   The application by Boston Life to strike out the appeal on the ground that the appeal was a nullity because of non-compliance with rule 62.10(1) of CPR 2000 is dismissed with no order as to costs.

3.   The application by the JSA defendants for an extension of time within which to file their evidence and skeleton arguments in support of their appeal is granted with costs to Boston Life to be assessed pursuant to rule 65.11 of CPR 2000.

4.   Consequentially, the application by Boston Life to strike the JSA defendants application for the extension of time within which to file their evidence and skeleton arguments in support of their appeal is dismissed with no order as to costs.

5.   The appeal by the JSA defendants against the order of the master dated 26th March 2007 is granted with no order as to costs and the matter is remitted to the High Court for directions to be issued by a master or a judge.

Hugh A. Rawlins
Chief Justice

22

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK     )
                              )    ss.:
COUNTY OF NEW YORK   )

      Judith Guerilus being duly sworn, deposes and says: that deponent is not a party to this action, is over 18 years of age and resides in Kings, New York.

      That on the 7th day of November 2008 deponent caused the foregoing via overnight mail:

## ORDER TO SHOW CAUSE
## AND REQUEST FOR JUDICIAL INTERVENTION

to be served upon:

Shawn M. Alfano, Esq.
Attorneys for Plaintiff
144 Woodbury Road
Woodbury, NY 11797
(516) 746-8100

      at the address(es) designated by said attorney(s) for that purpose and by depositing a true copy of same enclosed in a postpaid, properly addressed envelope, in an official depository under the exclusive care and custody of the United States Post Office in the State of New York.

                                 Judith Guerilus

Sworn to before me on
this 7th day of November 2008

_____
      Notary Public

ARLENE FRIED
NOTARY PUBLIC, State of New York
No. 01FR5081251
Qualified in Richmond County
Commission Expires June 30, 20__

3409103.1

From:   Origin ID: OGSA   (212) 490-3000
Ernest Tonorezos
Wilson, Elser
150 East 42nd Street

New York, NY 10017



SHIP TO:   (516) 746-8100        BILL SENDER
**null null**
**Shawn M. Alfano, Esq.**
**144 WOODBURY RD**

**WOODBURY, NY 11797**

Ship Date: 07NOV08
ActWgt: 1.0 LB
CAD: 4939612/INET8091
Account#: S *********

Delivery Address Bar Code

Ref #   05935.00071
Invoice #
PO #
Dept #

TRK#
[0201]   7961 0084 3070

**MON - 10NOV        A4**
**PRIORITY OVERNIGHT**

**11797**
**NY-US**

**JFK**

**KC DPKA**

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

## Guerilus, Judith

**From:** TrackingUpdates@fedex.com
**Sent:** Monday, November 10, 2008 9:15 AM
**To:** Guerilus, Judith
**Subject:** FedEx Shipment 796100833090 Delivered

---

This tracking update has been requested by:

Company Name:          Wilson, Elser
Name:                  Ernest Tonorezos
E-mail:                judith.guerilus@wilsonelser.com

---

Our records indicate that the following shipment has been delivered:

Reference:                  05935.00071
Ship (P/U) date:            Nov 7, 2008
Delivery date:              Nov 10, 2008 9:11 AM
Sign for by:                M.PASSIGLIA
Delivered to:               Receptionist/Front Desk
Service type:               FedEx Priority Overnight
Packaging type:             Your Packaging
Number of pieces:           1
Weight:                     1.00 lb.
Special handling/Services:  Deliver Weekday

Tracking number:            796100833090

Shipper Information                 Recipient Information
Ernest Tonorezos                    null null
Wilson, Elser                       Shawn M. Alfano, Esq.
150 East 42nd Street                144 WOODBURY RD
New York                            WOODBURY
NY                                  NY
US                                  US
10017                               11797

Please do not respond to this message. This email was sent from an unattended
mailbox. This report was generated at approximately 8:15 AM CST
on 11/10/2008.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above,
or visit us at fedex.com.

This tracking update has been sent to you by FedEx on the behalf of the
Requestor noted above. FedEx does not validate the authenticity of the
requestor and does not validate, guarantee or warrant the authenticity of the
request, the requestor's message, or the accuracy of this tracking update. For
tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

UCS-840 (REV 1/2000)

## REQUEST FOR JUDICIAL INTERVENTION

<u>SUPREME</u>　　COURT,　<u>NASSAU</u>　　COUNTY　INDEX NO. DATE PURCHASED:
　　　　　　　　　　　　　　　　　　　　　<u>08-18651　10/9/08</u>

| | For Clerk Only |
|---|---|
| PLAINTIFF(S): · | PAID |
| LAW PRACTICE MANAGEMENT CONSULTANTS, LLC, WKNB PRODUCTIONS, LLC and DANIEL P. BUTTAFUOCO and ASSOCIATES, PLLC, DANIEL P. BUTTAFUOCO, LLC, and DANIEL P. BUTTAFUOCO, | NOV 03 2008 Entry date NASSAU COUNTY COUNTY CLERK'S OFFICE |
| DEFENDANT(S): M&A COUNSELORS & FIDUCIARIES, LLC and C. WILLIAM HOILMAN, | Judge Assigned |

Date issue joined:　<u>N/A</u>　·　Bill of particulars served (Y/N):　☐ Yes　☒ No

**NATURE OF JUDICIAL INTERVENTION (check <u>one</u> box only <u>and</u> enter information)**

☐ Request for preliminary conference
☐ Note of issue and/or certificate of readiness
☐ Notice of motion (return date: _____)
Relief sought_ )
☒ Order to show cause
(clerk enter return date: _____)
Relief sought _____
☐ Other ex parte application (specify:
_____

☐ Notice of petition (return date: _____)
Relief sought _____
☐ Notice of medical or dental malpractice action
(specify: _____)
☐ Statement of net worth
☐ Writ of habeas corpus
☐ Other (specify: _____

## <u>NATURE OF ACTION OR PROCEEDING</u> (Check <u>one</u> box only)

**MATRIMONIAL**

| | | | | | |
|---|---|---|---|---|---|
| ☐ Contested | -CM | | Malpractice | | |
| ☐ Uncontested | -UM | | ☐ Medical/Podiatric | -MM | |
| | | | ☐ Dental | -DM | |
| **COMMERCIAL** | | | ☒ *Other Professional | -OFM | |
| ☐ Contract· | -CONT | | <u>Legal malpractice</u> | | |
| ☐ Corporate | -CORP | | ☐ Motor Vehicle | -MV | |
| ☐ Insurance (where insurer is a party, except arbitration) | -INS | | ☐ *Products Liability | -PL | |
| ☐ UCC (including sales, negotiable instruments) | -UCC | | ☐ Environmental | -EN | |
| ☐ *Other Commercial | -OCC | | ☐ Asbestos | -ASB | |
| | | | ☐ Breast Implant | -BI | |
| | | | ☐ *Other Negligence | -OTN | |
| **REAL PROPERTY** | | | | | |
| ☐ Tax Certiorari | -TAX | | ☐ *Other Tort (including intentional) | -OT | |
| ☐ Foreclosure | -FOR | | | | |
| ☐ Condemnation | -COND | | **SPECIAL PROCEEDINGS** | | |
| ☐ Landlord/Tenant | -LT | | ☐ Art. 75 (Arbitration) | -ART75 | |
| ☐ *Other Real Property | -ORP | | ☐ Art. 77 (Trusts) | -ART77 | |
| | | | ☐ Art. 78 | -ART78 | |
| | | | ☐ Election Law | -ELEC | |

3402054.1

**OTHER MATTERS**        -OTH      ☐ Guardianship (MHL Art. 81)

☐ \*_____      ☐ \*Other Mental Hygiene      GUARD81 -MHIG

**TORTS**      ☐ \*Other Special Proceeding      -OSP

**Check "YES" or "NO" for each of the following questions:**

YES    NO                          YES   NO

☐     ☒    Municipality:                 ☐    ☒    Public Authority:

                 (Specify _____ )              (Specify) _____ )

YES    NO

☐     ☒    Does this action/proceeding seek equitable relief?

☐     ☒    Does this action/proceeding seek recovery for personal injury?

☐     ☒    Does this action/proceeding seek recovery for property damage?

**Pro-Note Time Frames:**
(This applies to all cases except contested matrimonials and tax certiorari cases)

Estimated time period for case to be ready for trial (from filing of RJI to filing of Note of Issue):
☐   Expedited: 0-8 months      ☐   Standard: 9-12 months      ☒   Complex: 13-15 months

**Contested Matrimonial Cases Only:  (Check and give date)**

     Has summons been served:      ☐ No    ☐ Yes    Date _____

     Was a Notice of No Necessity filed      ☐ No    ☐ Yes    Date _____

**ATTORNEY(S) FOR PLAINTIFF(S):**

| Self Rep.* | **Name** | **Address** | **Phone #** |
|---|---|---|---|
| ☐ | Shawn M. Alfano, Esq. Attorneys for Plaintiff | 144 Woodbury Road Woodbury, NY 11797 | (516) 746-8100 |

**ATTORNEY(S) FOR DEFENDANT(S):**

| Self Rep.* | **Name** | **Address** | **Phone #** |
|---|---|---|---|
| ☐ | Wilson, Elser, Moskowitz, Edelman & Dicker LLP Attorneys for Defendants Ronald T. Levinson and Levinson and Associates, P.C. | 150 East 42nd Street New York, New York 10017 | (212) 490-3000 |

\*Self Represented:  parties representing themselves, without an attorney, should check the "self Rep." box and enter their name, address, and phone # in the space provided above for attorneys.

**INSURANCE CARRIERS:** NONE

**RELATED CASES:  (IF NONE, write 'NONE" below)**

| Title | Index # | Court | Nature of Relationship |
|---|---|---|---|

Unknown at this time.

3402054.1

3

I AFFIRM UNDER PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE, THERE ARE AND HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOSULY BEEN FILED IN THIS ACTION OR PROCEEDING.

Dated: October 31, 2008

_____
(SIGNATURE)

Anastasios P. Tonorezos
(PRINT OR TYPE NAME

Wilson, Elser, Moskowitz, Edelman & Dicker LLP
*ATTORNEYS FOR DEFENDANTS*
M&A Counselors and Fiduciaries, LLC and C. William Hoilman
150 East 42nd Street
New York, NY 10017
(212) 490-3000
(212) 490-3038

ATTACH RIDER SHEET IF NECESSARY TO PROVIDE REQUIRED INFORMATION

3402054.1